624 P.2d 339

**Ernestina McMULLEN, on behalf of herself and her minor child, Edna Huitron; Gabriela Lopez, on behalf of herself and her minor child, Ruben Lopez; Michael Bonacquisti, on behalf of himself; and on behalf of all other persons similarly situated, Plaintiffs/Appellants,**

**v.**

**Dorothy HARGIS, former Director of the Cochise County Medical Card Department; Judy Gignac, J. Marlin Bohmfalk, and V. L. Thompson, members of the Cochise County Board of Supervisors, all individually and in their official capacities; Ronald Maxwell, Director of the Cochise County Medical Card Department, in his official capacity, Defendants/Appellees.**

**No. 2 CA–CIV 3675.**

Court of Appeals of Arizona, Division 2.

Dec. 30, 1980.

Rehearing Denied Feb. 11, 1981.

Review Denied March 3, 1981.

3. See Sec. 7–212, supra.

Southern Arizona Legal Aid, Inc. by Christopher Hitchcock, Douglas, Southern Arizona Legal Aid, Inc. by John G. Balentine, Tucson, for plaintiffs/appellants.

Beverly H. Jenney, Cochise County Atty. by Thomas E. Dugal, Bisbee, for defendants/appellees.

## OPINION

HOWARD, Judge.

At issue here are the eligibility requirements for free county medical assistance set forth in resolution 79–11 of the Cochise County Board of Supervisors.

A.R.S. Sec. 11–251(5) states that the board of supervisors may: "(p)rovide for the care and maintenance of the indigent sick of the county . . . ."

The standards of eligibility for free county medical assistance are set forth in A.R.S. Sec. 11–297(A) which limits such free care to a person who is:

"... an indigent as shall be defined by rules and regulations of the state department of economic security, an unemployable totally dependent upon the state or county government for financial support, or an employable of sworn low income without sufficient funds to provide himself necessary hospitalization and medical care . . . ."

Pursuant to the mandate of A.R.S. Sec. 11–297(A), the Arizona Department of Economic Security promulgated its Rule R6–3–1213 which defines indigency as follows:

"1. All public welfare recipients, and all foster home children whose care is paid for from State or Federal funds, are defined as indigent unless medical care is available from another source.

2. A person or family household, if not welfare recipients, is defined as indigent if it does not have:

a. Annual net income in excess of: $2,100—If single person, or married person, living alone.

$2,800—If married person living with spouse.

Plus $350—For each additional dependent member of the household.

(Net income is gross income from all sources less medical expenses incurred.)

b. Resources in excess of the following:

i. Household furnishings used by applicant and his family in his usual place of residence.

ii. Wearing apparel and necessary personal effects.

iii. The dwelling house in which such person resides and the land contiguous thereto not to exceed a fair market value of $10,000.

iv. Livestock used primarily for domestic purposes.

v. Tools of trade having a fair market value of $500.

vi. An automobile with a fair market value not exceeding $750.

vii. Other property or assets with the exception of a single or family burial plot having a total fair market value of $800 for a single recipient or $1,200 for a recipient and spouse or two or more recipients in a single household.

c. Means of eligibility for obtaining medical care from any other source."

The Cochise County resolution tracks R6–3–1213 except that it further states "annual net income" shall be determined by using ". . . gross income received during the three month period preceding the date of application multiplied by four, less medical bills incurred during the preceding three months . . ."

Appellant Ernestina McMullen, having been abandoned by her husband in March of 1978, applied for a medical card which entitled her to free medical care for herself and her minor child. At the time she had applied for such assistance, she was a pregnant, unemployed resident of Cochise County, and her only source of income was unemployment benefits of $62 per week. Her income in the 12 months prior to April 11, 1978, was $2,892. She had no assets which would exceed those described for indigents under the DES regulation. Since her gross income exceeded the annual gross income limitation specified in the DES regulation for a single person with one dependent, she was found to be ineligible for medical assistance from Cochise County. She later had a miscarriage and incurred medical bills in the total sum of $897.50 in connection with the miscarriage.

Gabriela Lopez applied for a medical card on June 6, 1978. She and her husband, Ruben, were residents of Cochise County. At the time of their application, Mrs. Lopez was seven months pregnant, unemployed and not looking for work due to her pregnancy. Her husband was working sporadically as a migrant worker making less than $200 per month at that time. Mrs. Lopez and her husband had no assets valued at more than the limits prescribed for indigents by the DES regulation. She was found ineligible for medical assistance by the medical card department because the couple's gross income for the prior 12 months, or approximately $5,700, exceeded the annual income limitation in the DES regulation for a married couple with no dependents. She incurred numerous medical bills following the denial of her application for assistance which totaled approximately $840.

Michael Bonacquisti was injured in a motorcycle accident on April 24, 1979 and was hospitalized for such injuries. He applied for medical assistance from the county on April 25th. At that time he was an unemployed resident of Cochise County with no dependents. He had worked previously from January 25, 1979 to March 5, 1979 during which time he earned approximately $840. He had no assets which exceeded the limits established by the DES regulation. Prior to the accident he was looking for and was physically able to work. He was found ineligible by the medical card department on May 16, 1979, because his income for the three prior months times 4 equaled $2,520. This exceeded the annual gross income limitation in the DES regulation for a single person with no dependents. He incurred medical bills for the period of April 25, 1979 through May 1, 1979 in the amount of $1,360.86.

On May 1, 1979, Mr. Bonacquisti applied to the Arizona Department of Economic Security for general assistance benefits and was granted the same effective May 1, 1979. A person who is receiving general assistance benefits is categorically eligible under the DES regulation for county medical assistance. Cochise County assumed responsibility for medical bills incurred by Mr. Bonacquisti after May 1, 1979. The county board of supervisors has refused to assume responsibility for medical bills incurred by him for the period of April 25 to May 1, 1979.

All of the appellants were denied the opportunity to apply for medical care as either an unemployable totally dependent upon the state or county government for financial support or as an employable of sworn low income without sufficient funds to provide themselves with necessary hospitalization and medical care.

It is the position of Cochise County that A.R.S. Sec. 11–297(A) does not provide for three separate standards of eligibility. It maintains that only one standard, indigency as defined by the rules and regulations of the Department of Economic Security, exists. We do not agree.

The language in the statute is clear and unambiguous. The three standards set forth in Sec. 11–297(A) recognize that a person need not be impoverished or devoid of all assets to qualify as an "indigent sick" person, and that a person who is unable to pay for necessary medical care is eligible.[1]

Appellants also attack the county's method of determining "annual income" as being arbitrary and capricious. We agree. The purpose of this legislation is to provide free medical care for those who are unable to do so. The legislature recognized that there may be situations where a person is working, making more than the maximum income allowed by DES, and yet still cannot pay for medical treatment. Taking gross income from the preceding three months and then multiplying it by 4 creates a sum based upon pure fiction thus subverting the intent of the legislature. The dissent states that the Board of Supervisors adopted DES Rule R6–3–1213 to define "sworn low income". This is not supported by the record. The Board of Supervisors does not recognize any category other than indigency and has never attempted to define "sworn low income" as used in the statute. See *Tai v. Lavine*, 79 Misc.2d 927, 361 N.Y.S.2d 486 (1974).

The judgment is reversed and the case is remanded to the trial court for such further proceedings as are consistent with this opinion.

RICHMOND, J., concurs.

HATHAWAY, Chief Judge, concurring in part, dissenting in part.

I concur with the disposition of the majority with reference to appellants Lopez and Bonacquisti because it was improper to exclude those appellants from eligibility for hospitalization and medical care under the second standard for eligibility set forth in A.R.S. Sec. 11–297(A), " . . . unemployable totally dependent upon the state or county government for financial support, . . ."

I respectfully disagree with the majority position with respect to appellant McMullen who claimed eligibility on the basis that she was " . . . an employable of sworn low income without sufficient funds to provide . . . necessary hospitalization and medical care, . . . " per A.R.S. Sec. 11–297(A). The Cochise County Board of Supervisors used DES Rule R6–3–1213 to define "sworn low income" and established a formula as set forth in the majority opinion for determining whether an applicant qualified under that standard. The formula was reasonably related to the purpose of the legislation. *Ferguson v. Arizona Department of Economic Security*, 122 Ariz. 290, 594 P.2d 544 (App.1979). I would therefore hold that the county's method of determining "annual income" is not arbitrary and capricious and would affirm as to appellant McMullen.

---

1. For a definition of medical indigency see *County of Hudson v. Hernandez*, 157 N.J.Super. 85, 384 A.2d 552 (1978) and the cases cited therein.